**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION**

CURTIS WAYNE CLIFTON
ADC #650436                                                                                     PLAINTIFF

V.                              CASE NO. 3:15-CV-0031 DPM/BD

OCTAVIOUS BAILEY, et al.                                                            DEFENDANTS

**RECOMMENDED DISPOSITION**

**I.      Procedures for Filing Objections:**

This Recommended Disposition ("Recommendation") has been sent to Judge D.P. Marshall Jr. Any party to this suit may file written objections with the Clerk of Court within fourteen (14) days of filing of the Recommendation. Objections must be specific and must include the factual or legal basis for the objection.

By not objecting, any right to appeal questions of fact may be jeopardized. And, if no objections are filed, Judge Marshall can adopt this Recommendation without independently reviewing the record.

**II.     Background:**

Plaintiff Curtis Clifton, formerly a detainee at the Mississippi County Detention Center ("Detention Center"), filed this lawsuit *pro se* under 42 U.S.C. § 1983, alleging that Defendants acted with deliberate indifference to his medical needs and discriminated against him. (Docket entry #2) The Defendants are all employees of the Detention Center.

Defendants have moved for summary judgment on all claims.[1]  (#30)  Mr. Clifton has responded; the Defendants have replied; and Mr. Clifton has responded to their reply. (#33, #34, #35)  The motion is ripe for decision.

For reasons set forth below, the Defendants' motion for summary judgment (#30) should be GRANTED.  Mr. Clifton's claims should be DISMISSED, with prejudice.

## III.  Discussion:

### A.  Standard

Summary judgment means that the court rules in favor of a party without the need for a trial.  A party is entitled to summary judgment if the evidence, viewed in the light most favorable to the party on the other side of the lawsuit, shows that there is no genuine dispute as to any fact that is important to the outcome of the case.  FED.R.CIV.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 246, 106 S.Ct. 2505 (1986).

Here, the Defendants have moved for summary judgment, so they must produce evidence showing that there is no real dispute about any fact that is important enough to make a difference in how the case is decided.  If they meet this burden, Mr. Clifton must respond by producing evidence that contradicts the Defendants' evidence.  *Torgerson v. City of Rochester,* 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc).  If Mr. Clifton does not

---

[1] Mr. Clifton's claims against Defendants in their official capacities and against the Mississippi Detention Center were previously dismissed without prejudice.  (#19)

come forward with enough evidence to show that there is a real dispute, the Court must grant summary judgment in favor of the Defendants, and there will be no trial. *Celotex Corp.,* 447 U.S. at 322–23, 106 S.Ct. at 2552.

    B.    The facts

According to Mr. Clifton, on December 30, 2014, Defendants Bailey and Cummings entered his dorm to conduct a search of the barracks. (#2) Defendant Bailey confiscated Mr. Clifton's green mat because it was a diabetic mat, and Mr. Clifton is not diabetic. (#2) Mr. Clifton noticed that two other inmates were able to keep their diabetic mats, even though they were not diabetic. (#2)

On that same day, Mr. Clifton went to see the nurse regarding lower back pain that he says is a result of scoliosis. (#2) The nurse told Mr. Clifton there was no such thing as a diabetic mat. (#2) After examining Mr. Clifton, the nurse noted that he should be issued a second mat to help with his back pain, and she informed the officers of her decision. (#2)

While Mr. Clifton was waiting for his lunch, Defendants Bailey and Cummings came into his barracks and told him that the nurse had instructed them *not* to give him two mats. (#2) Mr. Clifton asked to speak to the shift supervisor, Defendant Soward. (#2) Defendant Soward confirmed that the nurse said *not* to give him two mats. The next day, Mr. Clifton asked the nurse why she told the officers not to issue him two mats, and the nurse explained that she did not say that. (#2) Mr. Clifton alleges that the nurse

discovered that someone had altered her notes, changing the notes to read that Mr. Clifton was not to have two mats. (#2) Subsequently, Mr. Clifton was promised a second mat. (#2) On January 5, 2015, Mr. Clifton says, he finally got his second mat from an officer on another shift. (#2)

      C.     Qualified Immunity and Mr. Clifton's Deliberate-Indifference Claim

To determine whether qualified immunity applies, the Court must determine "whether the facts alleged or shown, construed in the light most favorable to [Mr. Clifton], establish the violation of a constitutional or statutory right," and "whether that constitutional right was clearly established as of [the time of the relevant conduct], such that a reasonable official would have known that [his or her] actions were unlawful." *Scott v. Benson*, 742 F.3d 335, 339 (8th Cir. 2014)(quoting *Krout v. Goemner*, 583 F.3d 557, 564 (8th Cir. 2009).

Mr. Clifton claims that Defendants were deliberately indifferent to his scoliosis and back pain by denying him a second mat. Defendants contend that Mr. Clifton did not have a serious medical need and that a second mat was not medically necessary, as evidenced by the finding of a doctor who later examined Mr. Clifton. Defendants argue that they are entitled to qualified immunity.

Determining whether an official was deliberately indifferent to a pretrial detainee's medical needs involves both an objective and a subjective test.[2] *Scott v. Benson*, 742 F.3d 335, 339–40 (8th Cir. 2014). To prevail, Mr. Clifton must show that he suffered from an objectively serious medical need and that the Defendants "actually knew of but deliberately disregarded [his] serious medical need." *Id*. A medical need is objectively serious if it has been "diagnosed by a physician as requiring treatment" or is "so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Scott*, 742 F.3d at 339 (quoting *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995)).

The subjective prong of the test requires a showing that the defendants had a mental state "akin to criminal recklessness." *Id*. (quoting *Gordon v. Frank*, 454 F.3d 858, 862 (8th Cir. 2006)). Mr. Clifton must show "more than negligence, more even than gross negligence." *Fourte v. Faulkner County, Ark*., 746 F.3d 384, 387 (8th Cir. 2014) (quoting *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000)).

In support of their motion, Defendants offer the affidavit of Kristina Stankiewiez, the Detention Center's licensed practical nurse who first authorized two mats for Mr. Clifton on December 31, 2014. (#32, Ex. 3) In her affidavit, Ms. Stankiewiez states that she reviewed Mr. Clifton's medical records from his 21 bookings into the Detention

---

[2] The Eighth Circuit has suggested that pretrial detainees have less of a burden showing a constitutional violation under the Fourteenth Amendment than convicted persons have under the Eighth Amendment. *Morris v. Zefferi*, 601 F.3d 805, 809 (8th Cir. 2010). The same deliberate indifference standard, however, applies to both classes of inmates. *Id*.

Center spanning from 2003 to 2014.  She testifies that Mr. Clifton never reported back problems or scoliosis until he complained to her of back pain on September 18, 2014.  When Mr. Clifton was booked into the Detention Center on September 8, 2014, he responded to questions about his medical condition but made no mention of back pain, back problems, or scoliosis.  Nor did Mr. Clifton mention a bad back or scoliosis at his initial health screen at the Detention Center on September 12, 2014.  (#32, Ex. 1 & 3)

On September 18, 2014, when Mr. Clifton saw the nurse and physician and reported back pain, he was prescribed medicine and told to return to medical if his symptoms got worse.  (#32, Ex. 1 & 3)  On December 29, 2014, he returned to the nurse's office complaining of back pain.  At that time, he told Nurse Stankiewiez that he had scoliosis.  (#32, Ex. 1)  The nurse was unable to obtain any medical records confirming scoliosis; however, she authorized an extra mat for Mr. Clifton.  (#32, Ex. 1)

Later, Defendant Cummings noticed that Mr. Clifton's bed had one mat that was torn open with another mat stuffed inside of it.  (#32, Ex. 4)  According to Defendant Cummings, he took the mats because this represented destruction of Detention Center property.  (#32, Ex. 1)  It is not clear whether Defendant Cummings called the nurse before or after he took the mat, but at some point that day, Defendant Cummings called the nurse and explained about the mat-with-a-mat.  (#32, Ex. 1)  According to nurse Stankiewiez's affidavit, upon learning that Mr. Clifton had stuffed one mat inside

another, she told Defendant Cummings, "if that was the case, then one was thick enough and he would not need an extra mat." (#32, Ex. 1 & 3)

On January 8, 2014, Mr. Clifton saw the nurse and a physician. (#32, Ex. 3) The physician denied Mr. Clifton's request for an extra mat after determining that a second mat was not medically necessary. (#32, Ex. 3) On March 12, 2015, Mr. Clifton saw a doctor who again found that an extra mat was not medically necessary. Instead of a second mat, the doctor prescribed stretching exercises. (#32, Ex. 3)

Defendants' version of the facts differs significantly from Mr. Clifton's. Under either version, however, Mr. Clifton has failed to show that he suffered from an objectively serious medical need that required him to be issued two mats. Mr. Clifton told the nurse he had scoliosis and back pain, but at no time was the nurse able to find a scoliosis diagnosis in his medical records. Even though the nurse allowed Mr. Clifton to have two mats because he reported back pain, there was no objectively serious medical condition that required two mats based on examinations by a physician on January 8, 2014, and on March 12, 2015.

Based on the evidence, construed in the light most favorable to Mr. Clifton, no reasonable jury could find that Mr. Clifton suffered from an objectively serious medical need that required him to have two mats. Because he cannot establish a violation of a constitutionally protected right, the Defendants are entitled to qualified immunity on Mr. Clifton's deliberate-indifference claim.

D.   Discrimination

Mr. Clifton also claims that the Defendants discriminated against him based on his race. An inmate bringing an equal protection claim must show intentional or purposeful discrimination. *Klinger v. Dep't. of Corr.*, 31 F.3d 727, 733 (8th Cir.1994). "The heart of an equal protection claim is that similarly situated inmates were treated differently and that this difference in treatment bore no rational relationship to any legitimate penal interest." *Weiler v. Purkett*, 137 F.3d 1047, 1051 (8th Cir.1998). Thus, an equal protection analysis begins with this question: Has the plaintiff alleged facts showing that he was treated differently from others who were similarly situated? *Rouse v. Benson*, 193 F.3d 936, 942 (8th Cir.1999).

The crux of Mr. Clifton's discrimination claims here is that the Defendants "harassed" him because he is white and they are all African-American. (#2) Mr. Clifton's allegation that the Defendants "singled [him] out" because he is white falls far short of stating a race discrimination claim. Because Mr. Clifton has failed to meet his burden of setting out facts to show that similarly situated inmates of a different race were treated more favorably than he, the Defendants' motion for summary judgment (#30) on his race discrimination claim should be GRANTED.

**IV.   Conclusion:**

The Court recommends that the Defendants' motion for summary judgment (#30) be GRANTED. Mr. Clifton's claims should be DISMISSED, with prejudice.

DATED this 14th day of December, 2015.

_____
UNITED STATES MAGISTRATE JUDGE